SOUTH P.R. SUGAR CORP. ET AL., Petitioners, *v.* PUBLIC SERVICE COMMISSION OF PUERTO RICO, Respondent.

No. CE-64-9.    Decided January 4, 1966.

*James R. Beverley, Rafael Castro Fernández, Rafael Rodríguez Lebrón,* and *William Estrella* for petitioners. *J. B. Fernández Badillo, Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for respondent. *Lydia F. Marcos* for the Puerto Rico Sugar Board, intervener.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

South P.R. Sugar Corporation and Mar Ancha Corporation, hereinafter referred to as South P.R. and Mar Ancha, challenged in the Superior Court, San Juan Part, the decision rendered by the Public Service Commission of Puerto Rico on March 23, 1962, fixing permanent rates for a term of five years—which expires on December 31, 1965[1]—for

---

[1] No petition was made to stay the effects of the order fixing rates by filing bond, as authorized by § 80 of the former Public Service Act, 27 L.P.R.A. § 229, or by § 57 of Act No. 109 of June 28, 1962, 27 L.P.R.A. § 1268 (Supp. 1964, at 44), in force when appeal was taken to the Superior Court. See *Molini* v. *Soc. Mario Mercado e Hijos,* 73 P.R.R. 873 (1952); *South P.R. Sugar Co.* v. *District Court,* 62 P.R.R. 811 (1944).

Section 73 of the Public Service Act of 1962, 27 L.P.R.A. § 1001 (Annotation), provides that its approval does not set aside an authorization granted under the former Act.

the services rendered by said entities in receiving, weighing, analyzing, storing, handling, and shipping of bulk sugar. The trial judge held in essence that "It is not before the Court now whether . . . they are public-service companies pursuant to the provisions of the Public Service Act then in force. The question for decision is whether as public-service companies it is within the powers of the Commission to regulate the reception, weighing, analysis, storage, handling, and shipment of bulk sugar," and invoking §§ 23 and 24 of the former Public Service Act, 27 L.P.R.A. §§ 71 and 72, he decided in the affirmative the problem raised in those terms. An examination of the record shows that in effect the question to be elucidated was not so simple. Basically, a determination as to petitioners' condition of public-service companies was required.[2]

*The Facts.*—South P.R., in addition to the grinding of cane, is engaged in the operation of a dock in Guánica. As part of this operation it stores bulk sugar which is then shipped by means of certain mechanical facilities by Mar Ancha. In this activity both entities handle sugar from Central Guánica, which belongs to South P.R., from colonos of said central and of other centrals, specifically Coloso and Eureka.[3] It should be noted that in connection with the storage of the colonos' sugar, the rate is inoperative pursuant to the provisions of § 7 of the Sugar Act, 5 L.P.R.A. § 376, and see *Central Monserrate, Inc. v. Sugar Board,* 83 P.R.R. 105 (1961).

---

[2] As the suit in the respondent court was submitted on the basis of a stipulation of facts dispensing with the presentation of the administrative record before the Public Service Commission, we are ready to decide the question raised.

[3] In the objection to the issuance of the writ presented by the Sugar Board, reference is also made to sugar pertaining to "independent purchasers," but we have not been able to verify such fact from the record before us.

It is intimated that since 1962 petitioners are only engaged in the storage and shipping of bulk sugar from South P.R. and their colonos.

On June 26, 1957, the Public Service Commission requested South P.R. to file with said agency an application to devote to public service a private dock which, so far, it had been operating as assignee of a franchise originally granted on March 1901 to Guánica Land Corporation. In compliance therewith, South P.R. filed on the following September 9 a petition "for amending the private franchise granted in 1901, to permit the shipment of sugar belonging to third parties from that dock, or in the alternative, to convert said dock into a public-service one." Subsequently, Mar Ancha intervened in the proceeding to request permission to render services in the shipment of bulk sugar, although it made the exception that it did not consider itself a public-service company. On October 13, 1961 a temporary rate was fixed and on March 23, 1962, the permanent one.

■ Petitioners' position is that the process of storage and shipment of bulk sugar is not covered by the Public Service Act, (a) when it is carried out "for the purpose of exporting it abroad," as in the instant case, because it constitutes a direct intervention with the regulations of interstate commerce, a function which is exclusively incumbent upon the United States Congress, or by delegation of the latter, to the Interstate Commerce Commission, and (b) even if it were not an invalid regulation of interstate commerce, the same is not a public service subject to the Commission's regulations, because the Act which created said agency "does not contemplate said situation nor authorizes it."

■ 1. In support of the first ground for challenge, it is adduced that the process of shipment of freight in ships is comprised within the term of public carriers engaged in maritime transportation and, as such, it constitutes interstate commerce which cannot be regulated by the Commonwealth of Puerto Rico. Although it was a question of the exercise of the power to levy taxes—consubstantial to sov-

ereignty—in *R.C.A.* v. *Government of the Capital*, 91 P.R.R. 404 (1964), we disposed of a similar contention in upholding the validity of a municipal license tax imposed on the volume of business of a communications enterprise engaged in interstate and international commerce. We said then:

". . . Another historical fact is that the constitutional provision which reserves to Congress the power to regulate commerce with foreign nations, between the states and with the Indian tribes, *has not only not governed, nor governs, by its own force in Puerto Rico, but, on the contrary, Congress expressly provided that neither the Interstate Commerce Act and the several amendments made or to be made thereto* . . . nor an Act to regulate commerce of February 4, 1887, and the Acts amendatory thereof, according to § 38 of the Organic Act of 1917, 39 Stat. 964, and which are still in force as part of the Federal Relations Act, shall apply to Puerto Rico. Lastly, it is a historical fact that by express mandate of Congress, from the beginning the internal-revenue laws of the United States did not have, nor have, force or validity in Puerto Rico. Section 14 of the Foraker Act, 31 Stat. 80; § 9 of the Federal Relations Act, 39 Stat. 954.

"Naturally, in the past, as at present, there has been interstate commerce relation between Puerto Rico and the United States, but that relation existed by express provisions of Congress in the exercise of its authority under subd. 2, § 3, Art. IV of the Federal Constitution and at present under Act No. 600. This interstate commerce relation has constitutionally had, and still has, contours which are different from the relation which under the Constitution prevails among the states of the Union. That is why even under the former systems Puerto Rico was able to exercise the taxing power, and the Commonwealth may exercise that power at present respecting interstate commerce in a manner that perhaps it would not be permissible to a state covered by the provisions of the Federal Constitution." (Italics ours.)

See, also, *Mora* v. *Mejías*, 206 F.2d 377 (1st Cir. 1953) and *Buscaglia* v. *Ballester*, 162 F.2d 805 (1st Cir. 1947).

■ On the other hand, even assuming that the interstate commerce clause were applicable here as it is to the federal states, petitioners have not shown that the action of an agency of the Commonwealth constitutes an unreasonable, discriminatory, or onerous burden upon interstate commerce, or in conflict with the federal interest. *General Motors Corp.* v. *Washington*, 377 U.S. 436 (1964), *Cities Service Co.* v. *Peerless Co.*, 340 U.S. 179 (1950), and cases therein cited. The reason for the lack of complaints on this point is apparent: the Commission fixed the rate considering an interest of eight percent on the net investment of appellant corporations.

■ 2. As to the second ground, an examination of the former Public Service Act indicates that it cannot prosper. Section 2, 27 L.P.R.A. § 2, provides that "Public-service companies shall be . . . natural persons or bodies corporate as may engage in Puerto Rico in any of the following pursuits or businesses: . . . (c) *Wharves of all kinds and dry docks.* (d) *Public storage.*" It adds: "The term 'public storage' . . . includes each and all services for pay connected with the receipt, *transportation . . . storage, handling, conveyance,* and *deposit* of all kinds of goods, merchandise, possessions, properties, baggage, or freight."[4] Clearly, these provisions

---

[4] The new Public Service Act contains similar provisions in Subd. (c) of § 2, 27 L.P.R.A. § 1002 (Supp. 1964 at 8):

"(c) 'Public-service company' includes any . . . *dock operator, warehouser . . . offering to render or rendering* their services . . . for pay, to the public in general or to a part thereof, in Puerto Rico."

Subdivisions (z) and (aa) of the cited section define:

"(z) 'Dock operator' includes any person who owns, controls, operates or manages any dock, pier, slip or structure used by vessels in relation with or to facilitate the incoming or outgoing of passengers and the loading or unloading of property.

"(aa) 'Warehouser' includes any person, except dock operators, who owns, controls, operates or manages, as a public-service company, any warehouse, buildings or structure where property is stored in relation with or to facilitate the transportation of property by public or private carriers, or where property is stored by the general public."

are ample enough to include the activities performed by petitioners in relation to the sugar of other centrals, excluding South P.R. and its colonos.

It is argued, nevertheless, that the intention was to include only those enterprises exclusively engaged in storage as a public business and not South P.R., which carries it out as a service incidental to its principal business of grinding cane and processing sugar. We cannot agree to this restrictive interpretation of the Act. It is true that in the Regulations of Public Warehousing approved by the Commission on April 20, 1948, 27 R.&R.P.R. §§ 72–1 to 72–25, reference is made to warehouses which are engaged, as principal activity, in the receipt of goods or property from the general public, but it does not necessarily mean that other more limited warehousing activities are not subject to the supervision of the Commission. This is especially true if it is considered that the method of storing and shipping bulk sugar appeared in our economic structure subsequent to 1948.

If this were not sufficient, the activity of service in the storage and shipment of bulk sugar of other centrals would be covered by the general provisions of § 2(j), 27 L.P.R.A. § 2, to the effect that "such others as may engage in businesses or pursuits similar to those hereinabove enumerated" shall be considered as public-service companies. See, *South P.R. Sugar Corporation* v. *Sugar Board*, 88 P.R.R. 42 (1963).

Lastly, it is significant that in a former proceeding—the challenge of a decision of the Sugar Board on the determination of the shipping and marketing expenses of sugar for the purposes of liquidations to the colonos—these same corporate entities accepted that when shipping someone else's sugar they were public-service companies. It is stated in *South P.R. Sugar Corporation* v. *Sugar Board, supra,* "They considered the sugar which Mar Ancha shipped as if it were its own sugar because if it was engaged in shipping

someone else's sugar they would have had no doubt that it was acting as a public utility."[5]

The judgment rendered by the Superior Court, San Juan Part, on February 21, 1964, will be affirmed.

---

[5] See, also, *South P.R. Sugar Corporation* v. *Sugar Board of P.R.,* JA-65-2.